This morning is Pegg v. Herrnberger and Mr. Williams, whenever you're ready, we'll hear from you. Thank you, Your Honor. May it please the Court. Your Honor, my name is Montague Williams. I'm here on behalf of the appellant, Trooper Grant Herrnberger. It's a pleasure to be here. This is my first time before the First Circuit. You're welcome. Thank you. It's a pleasure, obviously, to be here with someone I consider a friend as well for the first time. So this is duly enjoyable for me, but I guess that will depend on how this goes in the next several minutes. You all may not be friends, I presume. I think we'll still be friends. We just won't have a heck of a story to tell. I guess that'll be the case. Your Honor, I believe this case is truly about two things, officer safety and personal responsibility. Trooper Herrnberger is seeking reversal of the district court's denial of his motion for summary judgment pursuant to Qualified Immunity Grounds. I think, Your Honor, if you look at the objective facts in this case from the lens of the perspective of a reasonable police officer, you'll find that the district court erred in not granting his motion for summary judgment on Qualified Immunity Grounds, essentially for four reasons. First, Pennsylvania v. Mims, I think, gives Trooper Herrnberger the absolute authority to ask Mr. Peck from the vehicle after a traffic stop. Secondly, because the vehicle stop at issue was premised on an unrestable offense, in this case, an expired inspection sticker pursuant to 17C.16.9, Western Code section 17C.16.9, Trooper Herrnberger could lawfully conduct a search of Mr. Peck subsequent to that said stop. Thirdly, in the alternative, and notwithstanding, essentially, the search subsequent to a lawful arrest premised on the inspection sticker, Trooper Herrnberger's protective pat-down of Mr. Peck satisfied the reasonable and articulable suspicion set forth in Terry. And then finally, Your Honor, it's the force used by Trooper Herrnberger. Well, if it's an arrest, you don't need a Terry argument. That's correct, Your Honor. And pursuant to that, we believe in Atwater v. City of Lago, there was, in fact, an arrest that did not violate the Fourth Amendment of the Constitution. In fact, in Atwater, the court calls what the Supreme Court said is that you can make an arrest for even a minor traffic offense. And in this case, there is no dispute, at least as it relates to the traffic offense, that is the probable cause which caused the stop. In this case, the expired inspection sticker. Even if you're correct, we assume we had grounds for a lawful arrest there. It's a separate question as to whether the force was excessive in the process of making the arrest. They're two distinct questions. That's right. It's said another way, Your Honor. In fact, you could have a lawful arrest and a lawful search, in fact, as a result of that arrest. And then during the course of that lawful arrest and search, use too much force. That would otherwise violate the Fourth Amendment seizure provision. But in this case… A lawful arrest, the reason for the arrest could be lawful, but the implementation of the arrest, trying to get cuffs on, could be excessive. They could use excessive force. Agreed, Your Honor. And so the excessive force case would be a question not of whether they could have arrested him, but whether in arresting him they used too much force. That's correct, Your Honor. In trying to get cuffs on. That's what the district judge essentially held here, didn't he? Well, I think the district judge went a little farther than that, Your Honor. I think in this case what the district judge held in denying the motion was that it could have… Trouper-Hernberger could have, based on audio that was heard in the video that is part of the joint appendix, it appeared, according to the court, that maybe Trouper-Hernberger had some sort of subject of desire to exercise a little bit more force than necessary. And the point that I think is relevant for the court's analysis is that Trouper-Hernberger's subjective intentions are absolutely irrelevant as it relates to an excessive force. Did the court actually view the video? According to the order, they did, Your Honor. And in fact… He did review it. Yes. He did review it. He said he reviewed it. In the order, they referred to the video. I don't know whether he reviewed it. He said he did. Yes, yes. He reviewed it. Yes. But the point here, for the purposes of this court, is what is the standard when evaluating whether or not the force used was objectively reasonable? The standard is not what the subjective officer's intent was. The standard is whether it was, in fact, objectively reasonable. And the point here… You're saying that this report applied a subject test instead of an objective test, is that right? That's correct, Your Honor. And that is the fatal flaw, particularly as it relates to qualified immunity analysis, which the court understands is intended to… It's not a defense to the allegations. It's an absolute bar to suit. And with regard to Trouper-Hernberger… Is the result that we reach, that we send it back to the district court because they applied the wrong standard, or do we determine that the force was objectively reasonable? I would like for the court to determine that the force was objectively reasonable. But I believe that there are enough objective facts when viewing the video, when viewing the evidence, the undisputed evidence, at least in the testimony in the case, that there was clearly an objective use of force. And for the qualified immunity analysis, the question really is did Trouper-Hernberger have a reason to believe that all of the actions that he was taking, given the perceptions he was making as they were ongoing, he could have done the things that he did? In this case, not only just stop the vehicle, but pull the occupant out? Well, I think the excessive force comes from the very short-term incident when Mr. Peck pulled his arm back a little bit, and the officer resisted that, pulled him down, and he went right to the ground. It was a single motion. He went like this and went down to the ground. They then put the cuffs on, and after that, there was no more force involved. That's correct. It was less than a minute. It was several seconds. About 15 seconds. Yeah. And so the question is whether that was excessive, objectively excessive. And I think a view of the videotape could lead one looking at it objectively and all the objective circumstances that led up to that point, that the force that was used by Trouper-Hernberger. Your Honor, this isn't the traditional excessive force case. The record is clear in that Trouper-Hernberger, after Mr. Peck was taken into custody, that is the handcuffs were put on him, there wasn't any kicking, there wasn't any beating, he was placed in the back seat of the cruiser. We're talking about a 15-second interaction. I'm not suggesting, I'm not trying to belittle that, at least from the perspective of Mr. Peck, that that in itself was too much. Well, I think Mr. Peck's criticism, and the Court shared this view, that the whole interaction might have been an overreaction by the police officer to the exchange, the verbal exchanges in the car and the passenger. But, setting that aside, if he's entitled to arrest him in that circumstance, then the question of excessive force is whether putting on the cuffs, he used more force than necessary to put on the cuffs. And that was a pretty short incident. It didn't look like there was anything there, and I'll ask your colleague this, it didn't look like there was anything there to punish or show anger. As a matter of fact, there wasn't even anger, there wasn't any shouting. Basically, it was a single movement. Now, it could have been because Mr. Peck was shorter and smaller as a person than the officer, but he had no trouble as Mr. Peck resisted. He just, one swing, and he was on the ground, and that was it. It wasn't one swing, he just pulled the arm down, the one arm down that he was resisting. He was on the ground, and then another officer came to hold him down and put the cuffs on. And I don't know if they rolled him over, you couldn't see in the video, but they had him on the ground for a few seconds to get the cuffs on, but there was no resistance after that, and there was no shouting after that. It didn't seem like anybody was angry at anybody or punishing anybody. So the question is, it might be the troubling part is why did that all happen? And Peck said that sometimes. He said, what are you guys doing? What's going on? And I think that's a legitimate question, and your argument, I gather, is that's a legitimate question on the subjective motives, but objectively he didn't violate the Constitution. But I think that's your position. Agreed, Your Honor. And so the point is, is that even if, as it seems the district courts seem to at least speculate, even if Trouba Hernberger was, for that matter, upset that Mr. Peck might choose to question his authority as it's set forth in. . . I think the officers thought he was a wise guy. And he may very well have, but it doesn't matter for purposes of the analysis at issue. And, Your Honor, you've essentially summarized about 19 pages of notes for me. Well, if you don't have anything more, you don't have to. I've been taught that if it's been said, then I don't think that I need to go on any further. I think the court actually has set forth the record.  And Mr. McCoy. Please support, counsel. My name is Robert McCoy. I'm here with Paul Harris. We represent Mr. Peck. It's well settled that in the absence of reasonable suspicion to effectuate a suspicion that an individual is armed and dangerous, that a tariff risk is not permissible. I don't think. . . The argument may have been a backfilling that this was Terry. But from the picture I saw, it looked to me like he was trying to tell him how to put on cuffs. It didn't look like he was conducting a frisk. He said, hold your hands like this. And I think the officer is going to arrest him. And, of course, there was no pat-down. It was basically getting the cuffs on him. Frankly, Your Honor, what Hernberger was doing is showing him how to put his hands behind his back for purposes of frisking him. Maybe. I took it. That's the way you hold your hands for cuffs. And that's the way Mr. Peck took it. And when he turned to him, and this is not a disputed fact, he simply asked him, am I being placed under arrest? And for asking the question, he's face-planted into the asphalt. I realize there's been some. . . He starts to put his hand back, and then he pulls up his left hand. Yes, Your Honor. And then the officer pulls him to the ground. It's almost a single motion, and then they put the cuffs on him. But I didn't see any effort to frisk, and I don't think that's relevant, whether it's Terry or not. You can arrest him. Respectfully, Your Honor, we disagree. This is not an arrestable offense in the sense that he can be taken into custody. He can certainly be stopped. This is a citation offense. This is a traffic infraction. What about Atwater? Well, Your Honor, under Atwater, which is very distinguishable from the matter here, because under Atwater, the Texas statute permits someone to be arrested. In West Virginia, under 17C.19.3, there are a series of traffic offenses for which an individual may be cited and taken into custody for purpose of being brought before a judicial officer. For all other offenses, not specifically enumerated, those are rather serious traffic offenses, negligent homicide, DUI, causing death, things of that nature. An individual gets a citation. If the individual refuses the citation. But Atwater made that argument. Mr. Atwater made that argument. The Supreme Court said that custodial arrest, even upon probable cause and conviction, would not ultimately carry him into jail time. Was that okay? Your Honor, there's a statute here that specifically prohibits taking someone into custody. There's an attorney general opinion that dates back into the 60s that addresses this particular statute. So the officer, if we're going to impute reasonable knowledge to him, he reads Atwater, and he says, I've studied Atwater, and Atwater says I can arrest him even if it's not a jailable offense. And you say, but the state law says it's not jailable. And he says, I agree, and Atwater says I can still conduct this arrest under the federal constitution. It's a little bit dicey, isn't it, to make this argument? Well, my thought is that the state law standard can be a more restrictive standard than the federal standard. So if the state law standard is this. State law concededly, I haven't looked at those statutes, but concededly for purposes of this discussion, this is an offense for which you cannot jail somebody. That's correct. And so you can't take him into custody for taking him to jail. And Atwater tells the officer he can arrest him even if it's not jailable. Misdemeanor, even if it's not jailable. And there's a distinction between what we're talking about in terms of what's jailable. That's the ultimate penalty for the offense. In this particular instance, under West Virginia law, this is a 17C violation. This is a mill-run, garden-variety traffic offense for which someone receives a ticket, a citation. Without the Texas statute says. Your intuitive arguments, I think, are excellent because the whole thing should have never gotten elevated like this. The real issues, I think, is the one that we discussed with Mr. Williams is, okay, the officer's motives were being, I think the district court was carried away with the motives. And I think Mr. Pegg rightfully was saying, what's going on here? What's going on here? The officer's elevated it. But the question then becomes, though, for the constitutional lawsuit, did he violate the U.S. Constitution, number one, in arresting him, and number two, in using excessive force when arresting him? Your Honor, I agree with you that the subjective motivations of Trooper Herberger are largely irrelevant in assessing whether or not there was otherwise a constitutional basis to arrest him. But in this particular instance, context is everything. If you look at what Pegg says, that's the basis for which he's taken out of the car. He's not being arrested because of the traffic citation. They arrested him. They told him to get out and move back to the car. They told him how to hold his hands behind his back. Right. And the resistance came in that effort. Under the rubric of officer safety, which is belied by every single fact in the video. See, you're going to motive. It doesn't matter. We don't have to look at why he was doing it, as long as objectively he could have done it. I agree with that, Your Honor, and I would suggest that based upon the 17C19-3 provision, where you have a citation offense, you're allowed to take someone into custody otherwise. But for a citation offense, you get a ticket and you go on. If this court would uphold this stop on this basis under West Virginia law, then anyone's stop. You don't have to uphold the stop. We could say that the officers didn't objectively violate the Constitution. The officers have to be safe. Without question. They have to be satisfied they're safe. There was absolutely no fact here, Judge King, that would suggest that Trooper Herberger was in any form of danger. There's no fact and evidence here. If you look at what Trooper Herberger – Subjectively, if you want to look at subject, he saw him reach for his wallet, which he thought might have been an arm, and he had seen on the back the AK-15, so he put two and two together and basically said, I don't know what I'm dealing with. Am I dealing with a redneck, which is a wild man? And then he has this conversation. He said, he didn't do anything wrong, and so he's got those three things. And I don't know if that's enough. Those are disputed facts, Your Honor. It's not just I said the officer. It's everybody at the scene needs to be safe. There were two of them in the car. That's correct. Two officers. There's four people. They have to be sure that everybody's safe. I couldn't – I mean, arresting somebody is to keep everybody safe. Could not agree more, Your Honor. But there's not a single fact in the record that would substantiate other than that. They have to act reasonably and all that. Objective. If you put in a context that when Peg gets out of the car, when he asks the trooper, why do you need to see my passenger's ID? He hasn't done anything wrong. And Herberger admittedly was irate and did not – Let me ask you, what do you contend the officer did wrong under the Constitution? Specifically. He had no authority – he had authority under MIMS, obviously, to order him out of the vehicle. Anyone could be ordered out of a vehicle for any purpose. Wilson. Wilson. Wilson actually extends the MIMS rule to passengers. So everyone could be ordered out of the vehicle. Okay. So don't say what he could do. Tell me what he did wrong. When he put his hands on Mr. Peg, he had violated Mr. Peg's constitutional rights. Now, can you put your hands on somebody when you're trying to arrest them? Yes. Okay. If it's a lawful arrest. Okay. And the question is he was trying to arrest him. Let's assume that. Objectively. According to what the officer said, he was attempting to perform a pat-down search for Officer C. Well, I know what he said, but now we're getting to the subjective with the officers. We're trying to evaluate the subjective. It did not appear that he had his cuffs out, Your Honor. It did not appear that he was doing anything. Representative, the court may be in the record and one of the experts. I thought he put his hands on his cuffs on the belt. He came from the car, and just before he addressed Peg, he went like this in that little holster. And I thought he was either putting it or making sure the cuffs were there. And then he told him. He showed him. Pardon me? He showed him. Yeah. And then he showed him how to hold his hands. It's my recollection in one of the expert reports, and I believe Herrnberger testified to this in his deposition as well, that it is a search move to place one's hands behind one's back in this fashion, where the officer can put his hand over both hands and then attempt to pat down. I actually think we have a case where we approved an officer's handcuffing during a Terry stop for a very brief moment while they're doing the frisk. It really is of no moment at all because if there was an underlying unlawful effort to put hands on him, if he was not justified in doing it. No, no. My suggestion, you just conceded that if he is entitled to arrest, then he can put his hands on him. I do concede. So then the whole case comes down to could he have arrested him? In addition to two other things, Your Honor, was the force, and you got into this with Mr. Williams, was he permitted to use the degree of force that he did objectively? You've looked at the tape a lot, haven't you? I have, Your Honor. I don't know how an officer can put cuffs on in that circumstance, but that was one of the most efficient moves. There was no kicking, shoving, yelling. He basically just grabbed his arm, pulled him down to the ground, and put the cuffs on him. No, but Herberger was irate over the fact that Pegg had the temerity to ask him a question. That's a motive. I'm talking about the force that's used in putting on the cuffs. I understand that. When he comes back around the car and he turns his back on a guy. We're talking about the excessive force part. Yes. And my suggestion to you is based on looking on the tape, there was not one bit of force used beyond what's necessary to get the cuffs on him. I don't agree with that at all, Your Honor. What force did he use beyond that? Tell us why the force was there. Let's assume that Atwater and Alfred apply. So now we're just talking about excessive force. What makes this excessive force? If contextually, look at what Pegg did. He turned to ask a question, am I under arrest? And merely for asking the question, he's thrown to the ground and his forehead's scraped up on the asphalt. You missed his hand on his arm. He pulled his hand back, his arm back. And that's when the officer resisted that pull back and pulled him down. Agreed. But at that point, he is not engaged in any conduct at that juncture that would warrant. There was no force except pulling him down to get the cuffs on him. Respectfully, Your Honor, if you look at the size disparity between the two individuals, Mr. Pegg is a very, very short man. And Trooper Herberger is just. How is he going to put the cuffs on him? Tell me how he's going to do it. Your Honor, he wasn't attempting to cuff him. Take issue with that. Herberger did not testify he was trying to cuff him. My hypothetical was that he's entitled to arrest him. Is putting his hands on him okay? You said yes. Yes, yes. Then now we're asking what force was excessive in trying to implement arrest? By pulling a small, this large trooper, pulling this small man, hurling him to the ground. So what do you say that he should have done here that would have made it constitutionally permissible, keeping in mind that there's officer safety by virtue of the assumed lawful arrest? What should he have done in that circumstance? Presupposing, Your Honor, the lawfulness of all the conduct after that point, which of course we contest and the district court found was not in existence. Presupposing the lawfulness of all that, what he should have done was answer Mr. Pegg's question. I'm attempting to search you because he never said that. He never articulated to him why he was getting him out of the vehicle. But this is before he's done the pat down. So if Mr. Pegg is pulling his arm away and the trooper's to be answering a question, what protects the officer or anyone else at the scene from that person reaching to find a weapon? Judge, if you look at what happened here as Herberger comes around the vehicle, okay? Now bear in mind the basis on which he's not arresting him for the traffic citation. He's getting him out of the vehicle to search him for officer safety. That's what he puts in his complaint. He rounds the back of the vehicle, turns his back on the guy he professes to be armed. If you study the tape, you see his right hand burying a piece of paper in his back right pocket as he opens the car door here, thereby exposing the entirety of his midsection. His hands are so disabled and occupied, in fact, unable to get to a weapon, that he jerks his head like this to get Pegg out of the car to signal to him that he wants him out of the car. And once he's out of the car, Herberger turns his hands up and says to him, why are you giving me a hard time? And again, this is all in the context of Pegg asking him the question, why do you need to see my passenger's ID? He hasn't done anything wrong. But this doesn't address the excessive force claim. That's not force. Those are issues about whether – so the force claim is at the back of the car. First step is he's facing the officer and the officer says, turn around. And then the officer goes around to the side and shows him how to put his hands behind. He starts to do that, and then as the officer is trying to take this hand and pull it around, he pulls it forward and the officer pulls him back. If that conduct is unlawful, and we submit that it is, and that's what the district court found, if that conduct is unlawful, because we're talking about a traffic citation, which is not an arrestable offense. All right, Herberger, we're assuming under Atwater it's lawful. We're at the back of the car. We'll even assume that the trooper was careless from the time he signaled to him to get out to when they got back there. They're back there. No frisk has occurred yet. What was he supposed to do, in your view, to make it constitutionally permissible? He should have alerted Mr. Pegg to the purpose for which he was asking to put his hands behind his back. He should have notified him, I'm searching, I'm going to pack you down for weapons, okay, if that's truly what his intention was. And when Pegg asked the question, he should have answered the question, as opposed to grabbing him and throwing him to the ground. At this point, they were in a physical position. He had laid his hands on them, turned them around. He showed them how to hold his hands. The officer started to grab his right arm to pull it back around, and he resisted. And Pegg never moved. And he conceded that in that position. Yes, and Pegg never moved his left hand. If you study the film, he's still back. That's his right arm. Right, exactly. And his right arm could be going for his belt. It could be going for anything. He resisted. I'll bet you if you went to police academy that that would be a typical routine method for putting cuffs on. That's what he did. Pull him down, get him to the ground, have control. There's absolutely nothing that Herberger did in this case that would substantially, that he harbored any concern whatsoever for officer's safety. None. There's nothing that he did. You keep ducking the question. What's the force that was excessive? When he pulls him to the ground, I've answered. Let's assume the guy has a warrant for murder out, and they've learned that. Now they're pulling him back to the car, and they want to arrest him. Can't they have done what he did? There's a difference between the arrest that you're describing. We're talking about the excessive force during the arrest, which is physical in nature. So what physical conduct did the officer engage in that was beyond what he was entitled to engage in? Again, Your Honor, when he pulled him to the ground, when he took him to the ground. Okay, that's what I thought your point was. I'm just wondering what else he should have done in that case. When the guy pulls his arm back, what should he have done? Just tell me what the officer should have done in your view. Peg was asking a question. That's not a disputed fact. He was asking, am I under arrest? He was pulling his arm. He was pulling his arm back. I understand that, Your Honor. I'm not disputing that. What I'm suggesting is that all he was doing as he pulls his arm, he's asking, am I under arrest? Under West Virginia law, if he's being arrested unlawfully, and we submit that that's the case because this is a citation offense, unlike Atwater where the statute's silent on what the officer can do once someone's taken into custody. Under West Virginia law, unless it's one of the enumerated exceptions, DUI with death, something like that, you get a citation. You don't get placed into custody. You're not haleable in front of a judicial officer, unless, of course, you refuse to sign the citation. So if you presuppose the unlawfulness of the statute. Can West Virginia legislature alter our precedent in a 1983 case? Your Honor, I think that the state court has the authority or state law has the authority to extend constitutional protections over and above what the federal standard is. That doesn't answer my question. This is a 1983 case. Yes, sir. That's a federal claim, constitutional violation. Can the West Virginia legislature alter our precedent in the Fourth Circuit or the Supreme Court concerning that? On a question of statutory application? Can we alter our precedent? I would submit no, Your Honor. I think that's the right answer. If you look at this case in its entirety, Mr. Pinkett's stopped for having an expired inspection sticker. And he asks a question of the officer. And the next thing you know, he's getting patted down and arrested for obstructing an officer and assaulting a police officer, which the magistrate, who considered the warrant without even the benefit of having the video to watch, found no probable cause. I mean, Kernberger was going for broke here. He was trying to get pegged for everything you can think of. So, you know, the district court found that there were issues of material fact, disputed issues of material fact. And we would submit. Did we get any deference to the district court in that regard? On questions of fact, it's a clear error review. And under questions of the application of the law of those facts, it's a de novo review. I thought the district court took into account all the subjective motives of the officers and put that into the calculus. And I can see that the court really focused on the two objective questions. One, was he justified in arresting them? And number two, did he use excessive force in implementing their arrest? Look, in the district court's order, the court found that he was arrested for the obstructing and assaulting an officer offense, not for what everyone in West Virginia knows under 17C, it's a traffic. Well, that's what the officer said. But the Supreme Court has said many times the officers don't even have to know of the offense as long as it's justified. I mean, they can say one thing, they can be totally wrong legally. Simply saying that because the statute, unlike Atwater, again, unlike the Texas statute, says you get arrested for these offenses, just these offenses, that all that could happen to Pegg in that instance was he would get a ticket. If this court upholds the construction of the law that is being urged by the appellant here, then any West Virginia motorist stopped for a speeding ticket, a burned out license plate light bulb, not having a seat belt on, any traffic infraction whatsoever is subject to a roadside search. And that's at odds with the long line of cases beginning... Not a search, a stop, and maybe an arrest. But in this case, I think he chose to arrest them. And the question, you know, it's heavy handed, but the truth of the matter is I-95 goes through Maryland and about 96% of the cars going by violate the traffic laws. They're all going 7 to 10 miles over the speed limit as a group. I mean, it's not... And so every one of them can be stopped. We trust a lot in the rationality and the good judgment of officers. And you can question that in this case legitimately. I think very legitimately, and I think Pegg did, too. But we're facing now a 1983 violation that the officers violated the Fourth Amendment. Again, Judge, if the court upholds the construction urged by the appellants, then any motorist in West Virginia can be taken out... No, we wouldn't be saying that. We would be saying, in this case, did the officers violate the Fourth Amendment? The question is posited a different way. You don't have to approve the officer's conduct. You have to decide whether the officer crossed the line under the Fourth Amendment or whether he had a reasonable amount of immunity, reasonably chargeable. Judge, the only predicate for removing him under the appellant's construction of the facts, the predicate for removing him is that he was under arrest for purposes of having an expired inspection statement. So if you adopt that interpretation, then any motor vehicle infraction, ranging from a speeding ticket to a seat belt to an expired registration or a burned-out license plate light bulb, any of those will justify an officer asking someone on the car, as they're permitted to do under MIMS, for any of those offenses, but then thereafter searching the person because the person's deemed to be under arrest. As it relates to the 1983 action, there could be some, which is not alleged in this case, some violation of some state law rule that would permit some state law recovery, but we're under 1983. Well, for purposes of the claims that this Court's hearing on the qualified immunity, there are a number of state law claims that were asserted by Mr. Pegg and that the district court upheld, including a battery offense and including as well a tort of outrage. So we would ask you to affirm the district court. Thank you. Mr. Williams? I don't know that I have much more to add, frankly, unless the Court has some questions for me. I will yield the remainder of my time. I would, however, like to point out there are two statutes in West Virginia, 62-10-9, which was not cited in our brief, and then 15-2-12-B1, which was cited in our brief. 62-10-9 is a statute that gives sheriffs and sheriff's deputies the right to arrest for any offense violated in their presence in West Virginia. 15-2-12-B1 is a statute that empowers the West Virginia State Police troopers to arrest any person charged with a violation of any law in the state, to which they are a witness, for any offense or crime, and to make an arrest without warrant. So to think out what are still is on all squares with regard to its holdings. I don't know anything specific about an offense committed, a misdemeanor or lower offense committed in the presence of the officer, which are the two statutes you just read. That's correct. Thank you.
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee